UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MICHAEL ZON, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:19-cv-212 |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Michael Zon, Jr. applied for child's insurance benefits, supplemental social security income benefits, and Title II disability insurance benefits, alleging that he was unable to work due to disability. An ALJ found, however, that Mr. Zon was not disabled because he could still perform past relevant work and could hold a significant number of jobs in the national economy, so his claim was denied. Mr. Zon filed this appeal, asking the Court to vacate the ALJ's decision and remand the case for further proceedings due to alleged errors with the RFC assessment and her finding that Mr. Zon could perform past relevant work or a significant amount of jobs in the national economy. [DE 14, 15]. The Commissioner filed a response in opposition [DE 22], to which Mr. Zon replied [DE 25]. For the reasons set forth below, the Court remands this case for further proceedings.

### I.  FACTUAL BACKGROUND

Mr. Zon applied for supplemental security income benefits and insurance in March and June 2015, alleging a disability onset date of May 30, 2003. On May 29, 2016, he filed for Title II childhood disability benefits. Mr. Zon alleged disability due to mild mental handicap, ADHD, seizure disorder, high blood pressure, allergies, and dyslexia. (R. 243). He completed high school

1

in 2004, where he received special education classes. (R. 244). In May 2015, Mr. Zon was approved for a Medicaid Waiver and was found to have substantial functional limitations in self-care, mobility, and understanding and using language. (R. 232). In August 2015, through the help of Vocational Rehabilitation services, he started working as a bagger at a grocery store and was still employed at the time of the hearing in September 2016. The Vocational Rehabilitation assigned Mr. Zon a job coach to help him in his employment, who visited him 1-2 times a month. During the hearing, the vocational expert ("VE") testified that if someone needs a job coach to sustain employment, even if the person only requires a visit a couple times a month, it is accommodated work and that person is not "competitively employable." (R. 813–14).

After holding a hearing, the ALJ found that Mr. Zon suffered from the severe impairments of seizure disorder, obesity, borderline intellectual functioning, and attention deficit disorder. However, the ALJ also found that Mr. Zon did not have an impairment or combination of impairments that met a listing requirement at step three. (R. 17). The ALJ found moderate limitations in each category when assessing whether the "paragraph B" criteria were satisfied. After reviewing Mr. Zon's record, the ALJ submitted a hypothetical to the VE. (R. 25). The VE determined that a person with Mr. Zon's RFC could perform Mr. Zon's past relevant work. *Id.* Alternatively, based on the VE's testimony, the ALJ found that Mr. Zon could perform other work in the national economy. (R. 26). Therefore, the ALJ determined that Mr. Zon was not disabled. (R. 26–27). After the Appeals Council denied review, Mr. Zon filed this action seeking review of the Commissioner's decision.

## II.  STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of

2

disability benefits if they are supported by substantial evidence. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019); 42 U.S.C. § 405(g). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the ALJ's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. While the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III.  STANDARD FOR DISABILITY

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998).

Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ then uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a

significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## IV.  DISCUSSION

Mr. Zon offers two arguments in favor of remand. First, he argues that the ALJ erred in concluding that Mr. Zon's current work supports the assigned RFC without properly considering that it was accommodated work and therefore the RFC was not supported by substantial evidence. Second, he argues that the ALJ erred in finding that Mr. Zon could perform his past relevant work as a retail stock clerk or a significant number of jobs in the national economy. The Court only addresses the first argument as it agrees that the ALJ erred because the RFC was not supported by substantial evidence nor did the ALJ articulate the requisite logical bridge regarding Mr. Zon's accommodated job, therefore requiring remand. The Court need not address the remaining arguments, which can be addressed by the parties on remand.

In determining that Mr. Zon was not disabled, the ALJ's decision referenced Mr. Zon's work as a bagger on at least four separate occasions in her decision. (R. 19, 21, 23, 24). Mr. Zon argues the ALJ erred by relying heavily on Mr. Zon's job as a bagger, noting that he has been able to sustain the employment with no write ups from his manager, without adequately recognizing or accounting for the fact that Mr. Zon sustained this employment due to his job coach accommodation. Mr. Zon obtained this job through the help of Vocational Rehabilitation services in August 2015 and sustained the 20-30 hours a week employment with a job coach for over a year. Once or twice a month, Mr. Zon's job coach would visit him at work. During the hearing, the VE testified that if someone needs a job coach to sustain employment, even if the person only requires a job coach a couple times a month, it is accommodated work and the person is not "competitively employable." (R. 813–14). The ALJ found the following RFC:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant can never climb ladders, ropes or scaffolds, but he can frequently climb ramps and stairs; the claimant can frequently balance, stoop, kneel, crouch, and crawl. The claimant must avoid all exposure to moving machinery and unprotected heights. The claimant can remember and follow simple, but not detailed, instructions; he can perform the tasks assigned, but not always at a production rate pace; he can however, meet end of the day work goals. The claimant can have occasional contact with coworkers, supervisors, and the general public. The claimant can occasionally adapt to rapid changes in the workplace. The claimant needs instructions for new tasks to be repeated up to two times during the workday.

(R. 21).

In his opening brief, Mr. Zon correctly notes that "when the SSA determines whether an individual is disabled for SSDI purposes, it does *not* take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 803 (1999). However, *Cleveland* is inapposite to Mr. Zon's argument. The holding in *Cleveland* is read to mean the Commissioner cannot consider the possibility that a claimant *will* receive an accommodation in determining whether they would be able to hold a job. In other words, the Commissioner could not determine that Mr. Zon is disabled unless he received a reasonable accommodation and then find him not disabled under the assumption that he will receive that accommodation in the future. *See Glaspy v. Berryhill*, 771 F. App'x 747 (9th Cir. 2019) ("The ALJ properly applied the law by holding that ADA accommodation was not relevant to determine whether [the claimant] could perform other work at step five of the sequential evaluation."); *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 95 (3d Cir. 2007) (reminding the ALJ he "is not entitled to consider potential accommodation by employers in determining the availability of jobs in the national economy that Appellant can perform."). The Court reads Mr. Zon's argument differently than the *Cleveland* holding. He argues that in heavily

6

relying on his performance as a bagger, without discussing that this work was accommodated due to his job coach, she did not create the necessary logical bridge from the evidence to the conclusion and the RFC is not supported by substantial evidence. While *Cleveland* forbids the assumption Mr. Zon could receive an accommodation in the future, the argument here is that the ALJ failed to consider that Mr. Zon had retrospectively received an accommodation while successfully maintaining employment. *See Blackette v. Colvin*, 52 F. Supp. 3d 101, 117–18 (D. Mass. 2014) (reading *Cleveland* "to mean that the agency cannot consider the possibility that a claimant will receive an accommodation in determining whether they would be able [to] hold a job (i.e., the hearing officer could not say this claimant would be disabled unless she received a reasonable accommodation, but I will assume she will receive such an accommodation)") and interpreting the Plaintiff's argument to not be controlled by *Cleveland* because it pertains to past accommodations) (internal quotations omitted).

When determining whether a claimant has the ability to perform substantial gainful activity, and therefore is not disabled, the ALJ must consider whether the work a claimant is doing is done under special conditions to take into account his impairment. *See* 20 C.F.R. § 404.1573(c) ("If your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity. Also, if you are forced to stop or reduce your work because of the removal of special conditions that were related to your impairment and essential to your work, we may find that your work does not show that you are able to do substantial gainful activity. However, work done under special conditions may show that you have the necessary skills and ability to work at the substantial gainful activity level."). In doing so, the ALJ must adequately discuss any special condition a claimant may have and explain whether it shows that he cannot do substantial gainful activity. Here, the Commissioner

argues that the evidence the ALJ points to in her decision "implies that the presence of Plaintiff's job coach was not essential, consistent with the ALJ's finding." [DE 22 at 6]. While the ALJ did discuss Mr. Zon's job coach in her decision, she discounts Mr. Zon's testimony regarding the importance of the job coach and ignores evidence in the record supporting the necessity of the job coach. Additionally, the ALJ noted that Dr. Donn opined that Mr. Zon "might benefit from the assistance of a job coach," but does not articulate what weight she gives this portion of Dr. Donn's opinion. (R. 22, 607). The ALJ also does not explain how she considered this opinion evidence when devising the RFC. The ALJ failed to articulate a logical bridge from the evidence that Mr. Zon greatly relied on the job coach accommodation to sustain employment as well as the opinion evidence that Mr. Zon needs a job coach to sustain employment to the conclusion that his job coach was not essential to Mr. Zon's employment, which the ALJ heavily relied on in support of a finding of non-disability. Accordingly, remand is required.

In a neuropsychological evaluation report, Dr. Salem opined that Mr. Zon is an individual who will "continue to need Vocational Rehabilitation assistance including a job coach to help him find suitable employment without a high level of cognitive demand." (R. 374). The ALJ fails to discuss the part of Dr. Salem's opinion recommending continued assistance from Vocational Rehabilitation and a job coach. (R. 24). In November 2014, Dr. Zack, a primary care physician, opined that Mr. Zon "cannot work in a normal work environment due to his developmental disabilities and his difficulties with person interaction" and further stated that Mr. Zon is not "even suited for grocery store employment." (R. 441). After receiving the job as a bagger, his job coach noted additional services will be added for him once he is stable on the job. (R. 524). In December 2015, the job coach expressed concerns about Mr. Zon's employment. (R. 522). She stated that Mr. Zon "shows some anger and resistance when being asked to complete job task"

and the job coach is trying to help but he "may be at risk for losing his job." *Id.* The ALJ did not include that the job coach thought Mr. Zon may be at risk for losing his job nor did she reference Dr. Zack's opinion when discussing the record to support Mr. Zon's RFC. A consultative psychological examiner, Dr. Snyder, found that Mr. Zon's intellectual skills cause a significant degree of difficulty in obtaining gainful employment. (R. 365). The ALJ afforded this opinion little weight because it fails to provide specific limitations and since Mr. Zon "has worked since August 2015 as a bagger at [a store], which shows an ability to obtain and keep employment." (R. 24). The ALJ used Mr. Zon's current job to support assigning a lower weight to a consultative examination opinion, yet the ALJ does not discuss that this employment was obtained through the help of Vocational Rehabilitation assistance or that it has been sustained with the help of an accommodation. Although the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and her conclusions. *Terry*, 580 F.3d at 475. Here, the ALJ addressed Dr. Salem's evaluation, however, failed to discuss the opinion that Mr. Zon will need vocational rehabilitation and a job coach. Additionally, the ALJ did not explain how she concluded Mr. Zon's accommodated employment is not consistent with Dr. Snyder's opinion. Since the ALJ failed to adequately discuss the relevant evidence and create the logical bridge from that evidence to her conclusion that a job coach was not essential to accommodate his limitations in his job as a bagger the Court cannot provide Mr. Zon a meaningful review. *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007). Further, this, and other evidence discussed below, establish that the ALJ's failure to properly weigh the importance of Mr. Zon's job coach impact on him sustaining employment, is not supported by substantial evidence and therefore, remand is required.

To support the conclusion that a job coach was not essential to Mr. Zon's work performance, the ALJ emphasized Mr. Zon's testimony that when the job coach came to see him, she also saw other clients. (R. 21, 24). Mr. Zon testified that he sees the job coach when it is "her day to see [his coworkers], but she also checks on [him]. . . because she . . . likes to check on [him] as much as she can." (R. 816). The ALJ's decision makes the assumption that the *only* reason the job coach shows up once or twice a month to work with Mr. Zon is because she has other clients at the store. However, the presence of other clients does not negate the consistent meetings between Mr. Zon and his job coach. The ALJ failed to provide the logical bridge from this evidence to the conclusion that this somehow minimizes the importance of the job coach to Mr. Zon's ability to perform his work activities. While the job coach may have also been seeing other employees, it does not diminish the benefits Mr. Zon receives from this accommodation. Mr. Zon stated that if the job coach did not meet with him once or twice a month, he did not "think [his] relationship with [his] manager would change," however, he also testified that "[he] feels like [he does] better with her there because . . . she keeps [him] on task [and] shows [him] what needs to be done . . ., how to do it, [and] reminds [him] of what [he] need[s] to do." (R. 816–17). The ALJ only considered the part of the testimony that Mr. Zon's relationship would not change with the manager if the job coach did not come to see him. The ALJ did not consider the testimony that the job coach keeps him on task, reminds him what tasks needs to do, and physically shows him how to do it. This testimony is important because Mr. Zon testified that it is easier when he is physically shown things, which the ALJ notes in her decisions. (R. 21). However, the ALJ does not include this limitation in the RFC nor does the ALJ mention in the decision that the job coach would show Mr. Zon how to do things, rather than just tell him. The ALJ cannot "cherry-pick" facts that support a finding of non-disability while ignoring evidence

that points to a disability finding. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Here, the ALJ only considered testimony and evidence that suggests that Mr. Zon did not rely on his job coach or the job coach had nothing to do with his successful employment.

The ALJ concludes that Mr. Zon "has been able to keep his position [as a bagger] since August 2015 with no mention of him being unable to complete his job duties when the job coach is not present." (R. 24). While this point is an accurate statement of what is not in the record, the ALJ ignores a great deal of evidence in the record which supports the fact that Mr. Zon's ability to now sustain employment for over a year, when previously he would get fired after a very short time, is due in great part to his job coach accommodation. Mr. Zon testified that he had been fired from previous jobs for being too slow and his job coach noted in her report that he tended to be slow. (R. 590). Although Mr. Zon has not been written up by his manager at his current job, he did testify that the store manager has told him that he "need[s] to work faster" (R. 789) and the job coach fears he is at risk of losing his job. (R. 522). The ALJ failed to consider this evidence. Additionally, the ALJ did not consider the majority of Mr. Zon's job coach's report. In that report, she notes that Mr. Zon is in need of extra services and has not been able to hold long term employment in the past due to "issues." (R. 590).

The ALJ heavily relied on Mr. Zon's current job as a bagger, both his performance and his ability to sustain it. However, she did not adequately discuss the accommodation Mr. Zon had during that work nor was the RFC supported by this substantial evidence that his work was accommodated. This error is not harmless. During the hearing, the VE testified that when a job coach visits an individual once or twice a month, the work is accommodated, and the individual is not "competitively employable." (R. 813–14). Therefore, remand is required. *Hedgepeth v. Apfel*, 215 F.3d 1330 (7th Cir. 2000) (remanding because the ALJ did not properly consider the

11

limitations on the claimant's abilities that are evident from his performance at his previous job); *Tasha G. v. Saul*, No. 3:18-CV-00694-JVB-JEM, 2019 WL 3451477, at *3 (N.D. Ind. July 31, 2019) (remanding, in part, because the ALJ failed to consider the claimant's work history which already required accommodations that would not be available to her in a regular work place).

## V.  CONCLUSION

For those reasons, the Court REVERSES the Commissioner's decision and REMANDS for additional proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: August 10, 2020

/s/ JON E. DEGUILIO
Chief Judge
United States District Court

12